## UNITED STATES· v. BRANDT (No. 2132).[1]

1. CONSTRUCTION, PARAGRAPH 511, TARIFF ACT OF 1913—"HORN STRIPS * * * UNMANUFACTURED."

The provision of paragraph 511, tariff act of 1913, for "horn strips * * * unmanufactured" obviously contemplates that some manufacturing process or processes must be applied to the natural horn in order to produce a horn strip, because, of common knowledge, horn does not grow in strips.

2. EVIDENCE—PRESUMPTION FAVORS BOARD'S FINDING—"MANUFACTURES OF * * * HORN"—"HORN STRIPS."

Strips of horn, unpolished and undrilled, with unfinished ends, seeming rather crude, used for ankle supports in shoes, were found by the Board of United States General Appraisers to be "horn strips * * * unmanufactured," under paragraph 511, tariff act of 1913, rather than "manufactures of * * * horn" under paragraph 368. The court, being unable to discover from the record that the board has wrongly interpreted the evidence in finding the facts or misapplied the law to the facts as found, affirms the decision.

### United States Court of Customs Appeals, March 31, 1922.

APPEAL from Board of United States General Appraisers, Abstract 44344.

[Affirmed.]

*William W. Hoppin,* Assistant Attorney General (*Harry M. Farrell,* special attorney, of counsel), for the United States.

*Walden & Webster* for appellee.

---

[1] T. D. 39082.

[Oral argument February 23, 1922, by Mr. Hoppin and Mr. Webster.]

Before SMITH, BARBER, and MARTIN, Associate Judges; DE VRIES, Presiding Judge, participating in the decision by agreement of counsel.

BARBER, Judge, delivered the opinion of the court:

Paragraph 368 of the tariff act of 1913, among other things, imposes duty upon .

Manufactures of * * * horn—

while paragraph 511 allows free entry to—

Horns and parts of, including horn strips and tips, unmanufactured.

The issue here is under which of these two paragraphs the merchandise is properly classifiable.

The official exhibit, conceded to be typical of the importation, is a bundle containing more than 500 thin flexible pieces of horn, each piece approximately 4 inches long and a quarter of an inch wide. The ends of a majority of these pieces are roughly curved or rounded, some being very irregular and not rounded; none are square. The flat sides are plain without holes and are relatively smooth, apparently not polished, some sides being smoother than others. They are made from the horn of the buffalo, and may well be called strips.

There is no evidence to show what method or process or kind of implement was used to manufacture them from the original horn except what may be presumed from inspection.

At the present time these strips in their imported condition are used for ankle supports in shoes. They were formerly used in the manufacture of corsets and in robe making.

The merchandise was classified by the collector under paragraph 368. Importer protested, claiming classification under paragraph 511. The Board of General Appraisers upon hearing testimony and considering the exhibits, definitely found that these strips had not been advanced by processes of manufacture beyond the contemplation of the free list paragraph, and therefore reversed the decision of the collector and sustained the protest, from which judgment the Government appeals.

There is no question of commercial designation in the case, nor do we understand there is any question that these pieces of horn are horn strips within the common meaning of the language of paragraph 511. The sole question, therefore, is whether they are unmanufactured within the terms of that paragraph.

Two witnesses testified, one the importer in his own behalf and the other an examiner at the port of New York, who had formerly been employed in the manufacture of cutlery where deer horn was quite extensively used as covers for pocketknives, on behalf of the Government.

The importer knew nothing as to how these strips were manufactured, but said he had been importing similar articles since 1907,

and that they had always been allowed free entry. He produced samples of highly polished horn strips similar in size to the exhibits here, with uniformly rounded ends, and with holes through the same near each end, which he said he had imported during the time and sold to the dressmaker trade, but which he was not now importing, as there was no demand therefor.

The examiner testified that the typical exhibit was strip horn, the ends and surfaces of which, he said, could not be the result of the first process of sawing horn into strips, but how they were produced he did not know. He could not say whether or not they were cut with a knife or a machine from the natural horn. He had, however, he said, seen buffalo-horn strips cruder in appearance than Exhibit I, in that they showed the marks of the saw teeth, were not so uniform in thickness, and had perfectly square ends. In the cutlery business, in which he had been employed, the horn strips and tips used were different from these and were chiefly made from deer horn. He presented certain illustrative exhibits of that material, which he said were regarded as horn strips in that industry. These strips on one side show the natural outside surface of the horn; on the other side they show the marks of the saw teeth; and they are used, as we understand from his testimony, in the manufacture, among other things, of covers for pocketknives. He said that after they had been shaped and finished for such use they were called scales, or knife scales, and were known throughout the trade and bought as horn strips.

Upon this testimony, which is the substance of all that is relevant to the issue, the board came to the conclusion, as above stated, that the strips here had not been advanced by processes of manufacture beyond the provisions of the free-entry paragraph.

That paragraph, it is at once apparent, contemplates that a manufacturing process or processes must be applied to the natural horn in order to produce a horn strip, because, of common knowledge, horn does not grow in strips. As already appears, we are not advised as to the extent of the processes which have been applied to the merchandise before us; neither are we informed as to the trade designation, if any there is, that is applicable thereto. The merchandise itself is clearly strips of horn, and we hesitate to say that it has been advanced beyond a condition that is permissible under paragraph 511.

There is another feature of the case which is worthy of notice and makes in favor of sustaining the judgment below. The tariff act of 1883 contained a free-entry paragraph covering—

Horn and parts of horns unmanufactured, and horn strips and tips.

In Borgfeldt v. Erhardt (41 Fed. 102), decided January 7, 1890, this provision was under consideration. The same tariff act contained a provision assessing a duty upon horn and all manufac-

tures thereof not specially provided for. The collector had taken duty under that provision upon pieces of horn of India cattle cut into strips, polished, and ready for use as bones or stays for ladies' corsets and dresses, while the importer claimed they were entitled to free entry under the provision for horn strips. On the trial it appeared that the horns were split lengthwise and the solid tips cut off. They were then soaked and put into a hydraulic steam press with a steel plate between the respective layers and pressed down and flattened. Then they were planed into strips of various lengths, cut into uniform lengths, and sorted. Some of the strips were scraped smooth and others polished. Some were allowed to remain with the ends perfectly square, others were rounded off, and near the ends holes were punched.

It was shown by the testimony of many trade witnesses that the merchandise "in any and all of the conditions above mentioned, after being stripped from the horn," was known in the trade and commerce of the country as horn strips prior to the passage of the act of 1883.

The court, by Lacombe, Judge, upon these facts, said in substance that because the word "unmanufactured" was inserted in the middle of the paragraph the natural inference would be that the phrase "horn strips and tips" covered both manufactured and unmanufactured horn strips and tips, provided they had not been so advanced as to have become something else, and also said that in that case it was entirely clear that by reason of the proven commercial designation the merchandise there involved was horn strips within the meaning of the paragraph, and that Congress in enacting the act of 1883 must have so understood and legislated accordingly. The court's judgment was for free entry.

This interpretation was adopted by the Treasury Department (see T. D. 9879, dated February 21, 1890), and therein directions were given that like merchandise should thereafter be allowed free entry. The directions related to pieces of horn polished with a hole at each end and the ends partially rounded, ready for use as corset stays and dress stays. No mention was made of unpolished horn strips.

The tariff act of 1890, paragraph 611, that of 1894, paragraph 511, and of 1897, paragraph 577, contained substantially the same provisions for free entry of horn strips as the act of 1883. Each of the same acts contained paragraphs imposing duty upon manufactures of horn not otherwise provided for.

While the tariff act of 1897 was in force (see T. D. 18588, dated November 23, 1897), the Treasury Department came to the conclusion that pieces of horn polished and ready for use as bones for ladies' corsets and dresses, similar to those referred to in its direc-

tion of February 21, 1890, were not commercially known as "horn strips," but rather were known as "polished dress bones," and therefore directed that thereafter they be classified as manufactures of horn.

In T. D. 19584 (G. A. 4178) in re Sheldon & Co., dated June 11, 1898, the Board of General Appraisers reviewed the whole matter. It found the merchandise was identical with that involved in the case of Borgfeldt v. Erhardt, supra (which it will be noticed was *polished* horn strips), and upon the authority of that case held it entitled to free entry. As to commercial designation, relating to which 11 witnesses testified, it said there was hardly any conflicting evidence. Therefrom it appeared that the merchandise had for many years been known as horn strips, while later it had interchangeably been known as horn bone or dress bone, but, nevertheless, found it to be horn strips.

In the act of 1909, paragraph 589, this provision for free entry of horn strips appears in the same language as in paragraph 511 now under consideration. The only difference between that paragraph and its predecessors is that the word "unmanufactured" has been removed from the middle to the end of the paragraph.

So far as appears, there was no change in the administrative practice under this changed condition of the statute until the Treasury Department on June 9, 1914 (T. D. 34535), directed that polished horn strips, having the ends rounded and drilled, should be classified under paragraph 368 as manufactures of horn.

Again it will be noted that this ruling of the department did not cover merchandise like that at bar, and not until April 5, 1920 (see T. D. 38351), has the department undertaken to collect duty upon such merchandise.

In this last Treasury decision the department stated:

It has been the practice to classify free of duty, under paragraph 511 of the tariff, horn strips undrilled, which have been cut into uniform lengths, some scraped smooth, some polished, some with ends cut square, and others rounded off.

The department gives no reason for this change in classification, which, if justified, would appear to include the importation in this case.

It may be that pieces of horn like those now before us are not horn strips unmanufactured either in fact or by commercial designation, but upon the record in this case we do not think it should be so held.

The official exhibits are horn strips. To what, if any, extent they have been so manufactured as to advance them from the condition of what the trade regards, or from what might in common parlance be regarded as horn strips unmanufactured, we are unable to say. They are apparently unpolished, have no holes, and to nonexpert eyes appear rather crude.

The importer comes here with the finding of the Board of General Appraisers in his favor. That tribunal is possessed of as much knowledge as are we on the litigated question. We are unable to discover that it has wrongly interpreted the evidence in finding the facts or has misapplied the law to the facts as found, and its judgment is therefore *affirmed*.